UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-21967-BLOOM/Otazo-Reyes

ANNA RADZINSKAIA,

    Plaintiff,

v.

NH MOUNTAIN, LP, F/K/A NEW
HAMPSHIRE RAGGED MOUNTAIN
RESORT INVESTMENT, LP; NEW
HAMPSHIRE EB5 REGIONAL
CENTER LLC; AND DOUGLAS
ANDERSON,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants NH Mountain, LP f/k/a New Hampshire Ragged Mountain Investment LP ("Ragged Mountain"), New Hampshire EB5 Regional Center ("Regional Center"), and Douglas Anderson's ("Anderson") Motion to Dismiss the Amended Complaint, ECF No. [30] ("Motion to Dismiss").[1] Plaintiff Anna Radzinskaia ("Plaintiff") filed an Amended Response in Opposition to the Motion to Dismiss, ECF No. [37]. Defendants filed an Amended Reply in support of the Motion to Dismiss, ECF No. [49].[2] The

---

[1] Defendants filed a memorandum in support of the Motion to Dismiss, ECF No. [31]. Defendants filed the Declaration of Melissa N. Madrigal in Support of Defendants' Motion to Dismiss, ECF No. [32] ("July 13, 2023 Madrigal Declaration"), to which Defendants attached Exhibit A, the Partnership Agreement, ECF No. [32-1], Exhibit B, the Subscription Agreement, ECF No. [32-2], and Exhibit C, the EB-5 Investor Joinder Agreement of Escrow Terms, ECF No. [32-3] ("Escrow Agreement" or "Investor Agreement").

[2] Defendants also submitted a Reply Declaration of Melissa N. Madrigal in Support of Defendants' Motion to Dismiss the Amended Complaint, ECF No. [45] ("August 22, 2023 Madrigal Declaration"), and Exhibit D, "New Hampshire Ragged Mountain Resort "RMR" Investment LP" Confidential Private Placement Memorandum, ECF No. [45-1] ("Ragged Mountain PPM").

Court has reviewed the Motion to Dismiss, all supporting and opposing submissions, the record in this case, and the applicable law. For the reasons below, the Motion to Dismiss is granted in part.

## I. BACKGROUND

### A. Amended Complaint

Plaintiff's Amended Complaint, filed on June 29, 2023, alleges the following: Plaintiff is an individual who resides in Florida and a limited partner of Ragged Mountain. ECF No. [22] ¶¶ 1, 5 fig. ("Am. Compl."). Anderson is the Managing Member of Management Partners US LLC, which is the Managing Member of Regional Center, an entity that is the general partner of Ragged Mountain. *Id.* ¶ 4.

The United States Citizenship and Immigration Services ("USCIS") administers the Employment-Based Immigration: Fifth Preference ("EB-5") Program, which enables foreign investors to obtain U.S. residency. *Id.* ¶ 10. Investors may apply for an EB-5 visa by submitting the United States Form I-526, Immigrant Petition by Alien Entrepreneur if they invest the required amount of capital in a new commercial enterprise that will create full-time positions for at least ten (10) qualifying employees. *Id.* ¶¶ 10-12. The required amount of capital relevant here is $500,000.00. *Id.* ¶¶ 14-15.

Ragged Mountain would invest EB-5 investors' capital into an eponymous ski resort ("Ski Resort") in Danbury, New Hampshire, for the "development of overnight accommodations," "201 ski on ski off cabins," and "anywhere near 890 residential units." Am. Compl. ¶¶ 19-22. The Ski Resort remains largely unbuilt. *Id.* ¶ 20.

Anderson and Vladislav S. Sirota ("Sirota"), an attorney, entered into a written referral agreement in which Sirota agreed to procure investors to fund Ragged Mountain for $45,000.00 per investor. Am. Compl. ¶¶ 31, 33. Neither Sirota nor Anderson is registered with the Securities

and Exchange Commission as "broker-dealers." *Id.* ¶ 34. Sirota referred most if not all the approximately 83 Forms I-526 that were referred to Regional Center. *Id.* ¶ 32. Sirota told Plaintiff, who sought U.S. residency, that she could withdraw her investment at any time if she opted to pursue another method to obtain residency. *Id.* ¶¶ 10 n.1, 24. On February 8, 2018, Plaintiff executed a Subscription Agreement and paid to Ragged Mountain $545,000.00 to become an EB-5 investor and limited partner. *Id.* ¶ 14-15. Plaintiff later withdrew her Form I-526 petition, requested to withdraw from the Ragged Mountain, and demanded Defendants to return "the money that was invested." *Id.* ¶¶ 38-39.

The Amended Complaint asserts the following claims: Count I – Breach of Contract (against Ragged Mountain), Count II – Unjust Enrichment (against Ragged Mountain and NH EB-5) (alternative to Count I), Count III – Breach of Fiduciary Duty (against Anderson and NH EB-5), Count IV – (Exchange Act of 1934, 15 U.S.C. § 78cc(b)) (Effecting Transactions in Securities as an Unregistered Dealer against Defendants), Count V – Fraud (against Ragged Mountain and NH EB-5), and Count VI – Constructive Fraud (against Anderson and NH EB-5). *Id.*

**B. Documents Attached to Motion to Dismiss**

Ragged Mountain was formed as a limited partnership "to fund the development, expansion and improvement of" Ragged Mountain using investors' capital pursuant to the EB-5 Program. P'Ship Agreement § 1.01, ECF No. [32-1]; *see also id.* § 3.01 ("The business of the Partnership shall be to acquire, develop, expand, improve, manage and operate the Partnership Property and to do all other acts which may be necessary, incidental or convenient to the foregoing.").[3] Partners

---

[3] The Court may properly consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed, meaning that the authenticity of the document is not challenged. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Plaintiff does not contest the centrality or the authenticity of the Partnership Agreement, so the Court will consider the Partnership Agreement without converting the Motion to Dismiss into one for summary judgment.

are obligated to make Capital Contributions, defined as "the total amount of money or property . . . contributed to the Partnership by each Partner," for which "no Partner shall have any right to withdraw or make a demand for the withdrawal . . . until the full and complete winding up and liquidation of the Partnership." *Id.* §§ 2.08, 4.01, 4.02. The Partnership Agreement does not define Limited Partners but provides that "no single Limited Partner shall control the Partnership's business or management or have any right or authority to act for or on the behalf of, or otherwise bind, the Partnership." *Id.* § 9.01. However, the Limited Partners must form "an advisory committee to consult and advise the General Partner with respect to the partnership business as defined in NH RSA 304-Bl9, II(f)(l) through (f)(9) except (f)(2) and (f)(3), and any other advisory rights that may be required under 8 C.F.R. 204.6(j)(5)(iii) as determined by an applicable governmental authority." *Id.* By contrast, the Managing General Partner, i.e., Regional Center, "shall have the exclusive right and power to manage, operate and control the Partnership[,]" among other things. *Id.* § 8.01.

### C. Motion to Dismiss

Defendants submit seven arguments in support of the Motion to Dismiss. First, Count IV—the Exchange Act claim against all Defendants—must be dismissed because none are "dealers" or "brokers" within the meaning of 15 U.S.C. § 78c(a)(5)(A). ECF No. [31] at 12-14. Second, all claims against Regional Center must be dismissed because the Partnership Agreement limits its liability. ECF No. [31] at 15-16. Third, Counts V and VI—the Fraud claim and Constructive Fraud claim—must be dismissed because those are inadequately pleaded under Rule 9(b) of the Federal Rules of Civil Procedure and the Amended Complaint does not allege a false statement of fact. *Id.* at 16-18. Fourth, Count I—the Breach of Contract claim—must be dismissed because Plaintiff failed to satisfy a condition precedent to withdrawing her Capital Contribution in both the Subscription Agreement and the Escrow Agreement, namely, that she exhaust all administrative

appeals for an EB-5 visa. ECF No. [31] at 18-21. Fifth, Plaintiff's Count II—Unjust Enrichment—must be dismissed because express contracts govern this dispute. ECF No. [31] at 21-22. Sixth, the business judgment rule bars Plaintiff from asserting her Breach of Fiduciary Duty claim, Count III. ECF No. [31] at 22-23. Seventh, the action should be dismissed with prejudice because Plaintiff should not get a third bite at the apple to amend her Complaint. ECF No. [31] at 23-24.

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). When a defendant moves to dismiss for failure to state a cognizable claim under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009).

## III.   DISCUSSION

### A.   Count IV

The Court begins by setting forth the relevant provisions of the Securities Exchange Act of 1934 ("Exchange Act"), as amended. *See generally* 15 U.S.C. ch. 2B, §§ 78a-78rr. Under the Exchange Act, "every contract . . . the performance of which involves the violation of . . . any provision of [the Exchange Act] . . . shall be void . . . as regards the rights of any person who, in violation of any such provision . . . shall have made or engaged in the performance of any such contract[.]" 15 U.S.C. § 78cc(b).[4] Here, the relevant provision, 15 U.S.C. § 78*o*(a)(1), Section 15(a) of the Exchange Act, states that "[i]t shall be unlawful for any broker or dealer . . . to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered in accordance with subsection (b) of [Section 78*o*]." 15 U.S.C. § 78*o*(a)(1). A "'dealer' means any person engaged in the business of buying and selling securities . . . for such person's own account through a broker or otherwise." 15 U.S.C. § 78c(a)(5)(A). A "broker" "means any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A); *but see* 15 U.S.C. § 78c(a)(5)(B) (providing that "[t]he term 'dealer' does not include a person that buys or sells securities . . . for such person's own account, either individually or in a fiduciary capacity, but not as a part of a regular business."). Accordingly, the viability of Count IV turns on whether any Defendant is a broker or a dealer.

According to Defendants, none of them is plainly a "dealer" because the Amended Complaint fails to allege that any one of them is "engaged in a business" within the meaning of that term, specifically since Defendants do not sell or purchase securities beyond "a few isolated transactions." ECF No. [31] at 12. Nor are they "dealers" under SEC guidelines. *Id.* at 13.

---

[4] Section 78cc(b) contains certain exceptions to the voiding of contracts based on the use of "manipulative or deceptive devices" under 17 U.S.C. § 78*o*(c), none of which the parties raise in their submissions.

Defendants further argue they cannot be dealers by virtue of Anderson being a broker because the Amended Complaint pleads no facts to show that he is engaged in the business of selling securities with any regularity or participation or that he received a commission for the sale of Ragged Mountain's securities. *Id.* at 13-14.

Plaintiff responds that she has adequately alleged that Sirota and Anderson acted as unregistered brokers of Ragged Mountain securities. ECF No. [37] at 7. Plaintiff submits that Sirota received transaction-based compensation in connection with many of the investor transactions with Defendants and that Anderson regularly participated in securities transactions with Sirota, who regularly recommended the Regional Center securities to his clients *Id.* at 7-8. Plaintiff points to *Hui Feng* as an analogous case that shows Sirota is a broker because Sirota received referral fees from Regional Center. *See id.* at 3-4 (quoting *SEC v. Hui Feng*, 935 F.3d 721 (9th Cir. 2019)).

Defendants reply that Plaintiff's allegations as to Sirota do not prevent the Amended Complaint's dismissal because that case was "an enforcement action against an unlicensed attorney broker, not a regional center." ECF No. [49] at 10.

1. **Dealer**

"To qualify as a 'dealer,' a person must be in the 'business of' buying and selling securities." *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 809 (11th Cir. 2015); *see also id.* ("Big Apple and its subsidiaries depended on acquiring client stock and selling that stock to support operations and earn a profit.").[5] Although the Amended Complaint labels Defendants as "unregistered dealer[s]," the inquiry is whether any factual allegations support that conclusion.

---

[5] The Eleventh Circuit analyzed the meaning of "dealer" in 15 U.S.C. § 77b(a)(12); in doing so, however, the court noted that the definition of "dealer" in 15 U.S.C. § 77c(a)(5)(A) is "very similar" to the one in section 77b(a)(12). *Id.* at 809 n.11.

Nowhere in the Amended Complaint does Plaintiff allege that any one of Defendants is in the "business of" buying or selling securities; instead, the Complaint alleges that Defendants are in the business of developing real estate. ECF No. ¶ 20; *see also* Partnership Agreement § 3.01 (stating that the "business of" the "Partnership" is to "acquire, develop, expand, improve, manage and operate" the Ski Resort).

In this case, real estate development necessarily entails raising capital by selling securities,[6] but Plaintiff has presented no authority supporting that such transactions alone make Defendants dealers. To the contrary, a person for whom transacting securities is not "a part of a regular business" is excluded from the definition. For Section 78c(a)(5)(B) to be a meaningful exception, only an entity that is "engaged in the securities business," i.e., "engaged in the business of dealing" or "providing dealer services to others" such as clients, can be considered a dealer, not an entity that issues securities but does not provide services to clients. *See Chapel Invs., Inc. v. Cherubim Ints., Inc.*, 177 F. Supp. 3d 981, 991 (N.D. Tex. 2016) (citing 15 U.S.C. § 78c(a)(5)(A); 15 U.S.C. § 77b(a)(12); *Big Apple Consulting USA*, 783 F.3d at 809) (finding that investor who does not provide advice or services to other investors cannot be considered a dealer). Dealer services include soliciting investor clients, handling investor clients' money and securities, and rendering investment advice to investors. *In re Immune Pharms. Inc.*, 635 B.R. 118, 124-25 (Bankr. D. N.J. 2021) (quoting *Chapel Invs.*, 177 F. Supp. 3d at 990). Otherwise, the term "dealer" would encompass others who do not transact securities on behalf of clients. *See id.* ("[w]hereas an investor or trader may buy securities from issuers at substantial discounts and resell them into the public market for a potentially significant profit, a dealer buys and sells securities from its customer and to its customer." (citing C.H. Meyer, *Law of Stock Brokers and Stock Exchanges § 43-a*, at

---

[6] *See* Am. Compl. ¶¶ 11-16 (alleging that Plaintiff provided Ragged Mountain capital for a limited partnership interest).

33-34 (Supp. 1933)); *id.* ("Dealers are distinguished from investors and traders because they have customers and derive their income from marketing securities for sale to customers or from being compensated for services provided as an intermediary or market-maker" (citing Topic No. 429 Trades in Securities)); *see also XY Plan, Network, LLC v. S.E.C.*, 963 F.3d 244, 248 (2d Cir. 2020) (noting that brokers and dealers "effect securities transactions for customers, for which they typically charge a commission or other transaction-based fee").

As alleged, Plaintiff is not Defendants' investment client but a limited partner of Ragged Mountain, *see* Am. Compl. ¶ 5 fig. *Compare Client*, *Black's Law Dictionary* (11th ed. 2019) (defining client in part as "[a] person or entity that employs a professional for advice or help in that professional's line of work.") *with Partner*, *Black's Law Dictionary* (11th ed. 2019) (defining partner as "[s]omeone who shares or takes part with another, [especially] in a venture with shared benefits and shared risks."). Nowhere does Plaintiff allege that Defendants provide dealer services, such as by providing investment advice. Here, it is the Limited Partners who provide Ragged Mountain with advice, not the other way around. Partnership Agreement § 9.01. Accordingly, the Amended Complaint does not allege an investor client-professional relationship that entails buying and selling securities and cannot do so; as Section 3.01 of the Partnership Agreement demonstrates, the Partnership does not provide investor services to clients and instead runs a ski resort. It therefore cannot be that transacting securities is part of Defendants' regular business. For that reason, Defendants cannot be "dealers" within the meaning of the Exchange Act.[7]

### 2. Broker

The Amended Complaint does not support that Anderson is a broker. There are no

---

[7] Although the Amended Complaint alleges that Anderson qualifies as a dealer because "he received compensation contingent on the success of a securities transfer or based on the amount of value of a securities transaction . . . engaged in solicitation of potential investors, and provided advice or engages in negotiations," Plaintiff presents no factual allegations that support that conclusory allegation. *See* Am. Compl. ¶ 63.

allegations that Anderson received commission-based compensation in connection with the sale or purchase or securities. *See Quantum Cap., LLC v. Banco de los Trabajadores*, No. 1:14-CV-23193-UU, 2016 WL 10536988, at *7 (S.D. Fla. Sept. 8, 2016) (identifying commission-based compensation as a principal factor in determining whether a party acted as a broker-dealer). Moreover, there are no allegations that Anderson himself participated in sales of securities to EB-5 investors, sold a large amount of those securities, or advertised or solicited the securities in connection with their sale. *See id.* at *7 (describing how regularity of participation in in securities tends to establish that someone acted as a broker (citing *S.E.C. v. Imperiali, Inc.*, 594 Fed. App'x. 957, 961 (11th Cir. 2014)). Even if Sirota qualifies as a broker, it does not follow that Anderson's association with Sirota would also qualify Anderson as a broker. Anderson and Sirota entered into a written referral agreement in which Sirota agreed to procure investors to fund Ragged Mountain, but Plaintiff presents no legal support that Anderson's entry into such agreement makes him a broker. Am. Compl. ¶¶ 31, 33. Rather, as a court in the Middle District of Florida has explained, "[m]erely bringing together the parties to transactions, even those involving the purchase and sale of securities, is not enough to warrant broker registration under Section 15(a)." *SEC v. Kramer*, 778 F. Supp. 2d 1320, 1336 (M.D. Fla. 2011) (internal quotation marks and citation omitted). It is irrelevant whether *Hui Feng* supports that *Sirota* was an unregistered broker because the lynchpin of Plaintiff's claim is that Defendants are dealers if they are not otherwise brokers and, as explained, the Amended Complaint does not allege that any Defendant is engaged in the "regular business" of transacting securities.

None of Plaintiff's other authorities support that Defendants are either brokers or dealers. For example, *Cornhusker* stands for the general proposition that transaction-based compensation is one of the hallmarks of being a broker-dealer. *Cornhusker Energy Lexington, LLC v. Prospect St. Ventures*, No. 8:04CV586, 2006 U.S. Dist. LEXIS 68959, at *20 (D. Neb. Sep. 12, 2006). But

that case does not support that a non-party's acceptance of transaction-based compensation from a defendant makes the defendant either a broker or a dealer. Accordingly, Count IV must be dismissed.

The question remains whether dismissal should be without prejudice. Defendants submit that Plaintiff should not be allowed to take "a third bite at the apple." ECF No. [31] at 23. Defendants reason that this Court would not abuse its discretion in denying Count IV with prejudice given case law in the Eleventh Circuit and this district suggesting that Plaintiff is not entitled to a second opportunity to amend the Complaint. *Id.* at 23-24. Defendants contend dismissal with prejudice is particularly appropriate where a plaintiff has had the opportunity to amend her original Complaint after previewing a motion to dismiss. *Id.* at 24 (citing *Arencibia v. ADA Serv. Co.*, 533 F. Supp. 3d 1180 (S.D. Fla. 2021)). Plaintiff does not substantively respond to Defendants' argument.

A district court need not allow an amendment to a complaint where amendment would be futile. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (explaining that leave to amend under Rule 15(a) of the Federal Rules of Civil Procedure should be "freely given" absent the "futility of amendment"). As the Court has stated, Plaintiff cannot allege Defendants transact securities as part of its regular business because its business is developing real estate, not providing professional services to investor clients. She therefore cannot allege Defendants are "dealers." Count IV must therefore be dismissed as to Ragged Mountain and Regional Center. Nor can Plaintiff allege Anderson is a broker. As the Amended Complaint alleges, Sirota, not Anderson, was the individual who made purported misrepresentations to Plaintiff and others concerning Ragged Mountain and referred her to the Limited Partnership. Am. Compl. ¶ 24. Plaintiff therefore cannot allege that Anderson acted as a broker with respect to her purchase of Ragged Mountain securities. To the extent Plaintiff may allege Anderson, the managing member

of Management Partners US LLC, acted as a broker with respect to other securities transactions, the allegation of the referral agreement with Sirota makes plain that such an allegation would not be plausible because the task of procuring investors had been delegated to Sirota. *See Twombly*, 550 U.S. at 556 (requiring plausible grounds to support a claim for relief). As such, a third attempt by Plaintiff to amend her Count IV would be futile. *Cf. Rivas v. Bank of New York Mellon*, 777 F. App'x 958, 966 (11th Cir. 2019) (finding district court did not abuse its discretion when denying plaintiff leave to file second amended complaint where allegations showed subject matter jurisdiction did not exist). Accordingly, Count IV must also be dismissed as to Anderson.

**B. Subject Matter Jurisdiction**

A "district court may act *sua sponte* to address the issue of subject matter jurisdiction at any time." *Herskowitz v. Reid*, 187 F. App'x 911, 912-13 (11th Cir. 2006) (footnote call numbers and citations omitted). This is because federal courts are "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala.*, 168 F.3d at 409 (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Generally, "[a] district court can hear a case only if it has at least one of three types of subject matter jurisdiction: (1) jurisdiction under specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017) (quoting *PTA-FLA, Inc. v. ZTE USA, Inc.* 844 F.3d 1299, 1305 (11th Cir. 2016)) (internal quotations omitted). With regard to federal question jurisdiction, the district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C § 1331. With regard to diversity jurisdiction, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive

of interest and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a).

The Amended Complaint does not set forth a specific basis for the court's subject matter jurisdiction. *See* Am. Compl. ¶¶ 1-9. However, having determined Count IV must be dismissed, the Court lacks jurisdiction based on a specific statutory grant and on a federal question. Moreover, even were the Court to consider whether jurisdiction under Section 1332(a) applies, it would not permit exercising jurisdiction. That is because Plaintiff is a partner of Ragged Mountain, Am. Compl. ¶ 5, and a limited liability company is a citizen of every state in which a member is a citizen. *Bal Harbour Shops, LLC v. Saks Fifth Ave. LLC*, No. 1:20-CV-23504, 2022 WL 17733824, at *2 (S.D. Fla. Dec. 9, 2022) (citing *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004)). Diversity jurisdiction is therefore lacking since Plaintiff and Ragged Mountain are both citizens of the same state.

Regardless, because the remaining counts in the Amended Complaint are state law claims that arise from the same alleged conduct that gave rise to Count IV, the Court has supplemental jurisdiction. *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1563 (11th Cir. 1994) (explaining that, under section 1367(a) and, unless section 1367(b) or (c) applies, district courts "'*shall have*' supplemental jurisdiction over . . . additional claims . . . when those claims 'are so related to claims in the action within [the] original jurisdiction [of the court] that they form part of the same case or controversy under Article III of the United States Constitution.'" (emphasis added (quoting 28 U.S.C. § 1367)). Section 1367 provides in relevant part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-- . . . **(3)** the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c).

However, where a court has dismissed all the federal claims in a complaint, it may decline to exercise supplemental jurisdiction over the state law claims in that complaint pursuant to

13

1367(c)(3). *See United States ex rel. Crocano v. Trividia Health Inc.*, 615 F. Supp. 3d 1296, 1314 (S.D. Fla. 2022) (declining to exercise jurisdiction over False Claims Act relator's state law claims). Moreover, "[t]he Eleventh Circuit has a stated policy in favor of dismissing state law claims under these circumstances." *See id.* (quoting *Clarke v. Two Is. Dev. Corp.*, No. 15-21954, 2016 WL 659580, at *2 (S.D. Fla. Feb. 18, 2016)); *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial"). The remaining Counts of the Amended Complaint are therefore due to be dismissed without prejudice.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion to Dismiss the Amended Complaint, **ECF No. [30]**, is **GRANTED IN PART AND DENIED IN PART**.

    a. Count IV of the Amended Complaint, ECF No. [22], is dismissed with prejudice as to all Defendants.

    b. All remaining Counts of the Amended Complaint are dismissed without prejudice.

2. Defendant's Motion to Transfer to the District of New Hampshire, **ECF No. [25]**, is **DENIED AS MOOT**.

3. The Clerk is directed to **CLOSE** the case.

**DONE AND ORDERED** in Chambers at Miami, Florida on September 29, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record